IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

COREY MILLEDGE,

      Petitioner,

v.                              CASE NO. 4:14-cv-295-MW-GRJ

SECRETARY, DEP'T
OF CORRECTIONS,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

This case is before the Court on ECF No. 1, Petitioner's *pro se*

Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The

Petition stems from Petitioner's Gadsden County jury conviction for felony

battery on a DCF employee, for which he was sentenced to 10 years'

imprisonment. The Petition asserts three grounds of ineffective assistance

of trial counsel and one ground of ineffective assistance of appellate

counsel. (ECF No. 1.) Respondent filed a response and appendix with

relevant portions of the state-court record, arguing that the Petition should

be denied because his claims are unexhausted, procedurally defaulted,

state law issues not cognizable on habeas review, and without merit. (ECF

No. 15.) Petitioner has filed a reply, (ECF No. 20), and the Petition is

therefore ripe for review. Upon due consideration of the Petition, the response, the state-court record, and the reply, the undersigned recommends that the Petition be denied.[1]

## <u>State-Court Proceedings</u>

Petitioner was charged in case number 07-00029CFA with one count of aggravated battery on a specified employee, in violation of Fla. Stat. § 784.081. (ECF No. 16-1 at 49, 52.)[2] Prior to trial, the State offered Petitioner a plea deal for three years' imprisonment and two years of probation. (ECF No. 16-2 at 101.) The State subsequently offered Petitioner an omnibus plea deal encompassing the instant case as well as two other pending cases of battery on an inmate for a term of just under ten years' imprisonment. (*Id.* at 101–03.) Trial counsel, Zachary M. Ward, advised Petitioner that if he thought he was going to lose that it was in his best interest to take the omnibus plea offer. (*Id.* at 103.) Petitioner, however, declined the plea offer and proceeded to trial. (*Id.* at 108.)

---

[1] Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted. *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

[2] Because the page numbers throughout the exhibits (ECF Nos. 10-1, 10-2, 10-3, 10-4, 11-1, 11-2, and 11-3) are inconsistent, the page numbers for the exhibits to which the Court cites refer to the ECF page numbers at the top of the page.

Trial and Direct Appeal

On July 30, 2008, Petitioner was convicted of the lesser-included crime of felony battery on a specified employee, Brenda Galloway—an employee of the Department of Children and Family Services. (ECF No. 1 at 90–91.) Petitioner was sentenced to fifteen years' imprisonment with 183 days as jail time credit. (*Id.* at 94–99.)

On January 30, 2009, Petitioner's appellate counsel, James C. Banks, filed an *Anders* Brief. (ECF No. 16-1 at 413–24) Mr. Banks stated that "[d]espite a thorough reading of the record on appeal and review of the law on arguable points, the undersigned appellate counsel can find no meritorious argument to support the contention that the trial court committed significant reversible error in this case." (*Id.* at 420.) In addition, Mr. Banks represented that he "contacted Appellant's trial counsel, Zachary Ward, and he agreed that there are no meritorious issues to be raised in this appeal." (*Id.*) On February 19, 2009, the First DCA informed Petitioner of his opportunity to file a *pro se* appellate brief. (*Id.* at 426.) Petitioner subsequently filed his initial appellate brief on August 13, 2009. (*Id.* at 427–37) On appeal, Petitioner argued that the trial court erred in failing to conduct a competency hearing. (*Id.*) On April 5, 2010, however, the First DCA per curiam affirmed without written opinion. (*Id.* at 439–40.)

Original Sentence Collateral Proceedings and Re-Sentencing

In the meantime, on March 12, 2009, Petitioner filed a *pro se* 3.800(b)(2) motion to correct sentencing error. (ECF No. 16-1 at 118–20.) Petitioner argued that he was convicted of felony battery, a third degree felony, but that the third degree felony was impermissibly reclassified to a second degree felony, resulting in his 15 year sentence. (*Id.*) The State agreed that Petitioner should be re-sentenced because he was convicted of a third degree felony, not a second degree felony. (ECF No. 16-1 at 123.) The State also represented that it would be seeking a sentence pursuant to Fla. Stat. § 785.084(1)(b), Habitual Violent Felony Offender, upon re-sentencing. (*Id.*) Subsequently, on March 24, 2009, the State filed a Notice of Intent to Seek Enhanced Penalty as Habitual Violent Felony Offender based on the instant conviction and a prior conviction for aggravated battery. (ECF No. 16-1 at 125.)

On October 28, 2010, Petitioner filed a motion for postconviction relief pursuant to Fla. R. Crim. P. 3.850, presenting fourteen claims of ineffective assistance of trial counsel. (ECF No. 16-2 at 347–54; ECF No. 16-3 at 1–37) The circuit court held an evidentiary hearing pertaining to Petitioner's 3.850 motion and a re-sentencing hearing on Petitioner's 3.800

motion. (ECF No. 16-3 at 257–88; ECF No. 16-4 at 1–85.) At the end of the hearing, the court re-sentenced Petitioner to ten years' imprisonment as a habitual violent felony offender. (ECF No. 16-4 at 78.)[3] Then on January 6, 2012, the trial court denied Petitioner's motion for postconviction relief on the merits. (ECF No. 16-5 at 29–38.) Petitioner filed a notice of appeal on January 13, 2012, but the First DCA per curiam affirmed without written opinion. (*Id.* at 39–40, 252.)

Next, Petitioner filed a state petition for writ of habeas corpus pursuant to Fla. R. App. P. 9.141, asserting three grounds of ineffective assistance of appellate counsel. (ECF No. 16-1 at 442–56; ECF No. 16-2 at 1–16). Petitioner subsequently filed an amended petition for writ of habeas corpus alleging ineffective assistance of appellate counsel on February 8, 2012. (ECF No. 16-2 at 52–65.) The sole ground for relief in his amended petition was that appellate counsel was ineffective for failing to timely raise on appeal that the trial court erred in instructing the jury on the non-existent offense of felony battery on a DCF employee. (*Id.*) The First DCA, however, per curiam denied Petitioner's petition for ineffective

---

[3] On July 18, 2011, the trial court issued an Order for Imposition of Sentence as Habitual Violent Felony Offender explaining its reason for imposing a ten-year sentence, which is an upward departure from the five-year maximum sentence for felony battery. (ECF No. 16-3 at 131–32.)

assistance of appellate counsel on April 26, 2012. (ECF No. 16-2 at 313.)

Collateral Proceedings After Re-Sentencing

After being re-sentenced, Petitioner filed a notice of appeal to the First DCA on August 17, 2011. (ECF No. 16-3 at 133–34.) Then on May 16, 2012, he filed another state petition for writ of habeas corpus in which he again argued that appellate counsel was ineffective for failing to argue on direct appeal that the trial court erred in instructing the jury on the lesser-included offense of felony battery by actually and intentionally touching or striking the victim against her will because Petitioner was not charged with such in the information. (ECF No. 16-4 at 110–34.) The First DCA per curiam denied the petition without written opinion. (*Id.* at 162.)

On May 24, 2012, Petitioner filed a motion for postconviction relief pursuant to Fla. R. Crim. P. 3.850. (ECF No. 16-5 at 260–277) Petitioner presented two grounds of ineffective assistance of counsel, claiming that: (1) counsel for re-sentencing, Robert Morris, failed to move for a competency evaluation at re-sentencing; and (2) trial counsel Mr. Ward failed to timely object to the trial court's jury instruction on felony battery. (*Id.*) On May 31, 2012, however, the trial court denied Petitioner's motion as successive, untimely, and frivolous. (*Id.* at 301–02.) Petitioner filed a notice of appeal on June 6, 2012. (*Id.* at 304.) The First DCA per curiam

affirmed without written opinion on November 29, 2012. (ECF No. 16-6 at 13–14.)

In the meantime, on June 1, 2012, Petitioner filed yet another state petition for writ of habeas corpus, alleging that he is being illegally detained because the trial court erred in instructing the jury on the lesser-included offense of felony battery by actually and intentionally touching the victim against her will because Petitioner was not charged with such in the information. (ECF No. 16-6 at 18–36.) He subsequently filed a motion to supplement in which he reasserted the same claim. (*Id.* at 67–75.) On August 3, 2012, the circuit court denied all pending claims for relief. (*Id.* at 81–82.) Petitioner filed a notice of appeal on August 22, 2012. (*Id.* at 87.) The First DCA dismissed the appeal, however, for failing to respond to the Court's order requiring Petitioner to file his initial brief. (*Id.* at 91.) 1D12-4723

On January 4, 2013, Petitioner filed a 3.800 Motion to Correct Sentencing Error During Pending Appeal, in which he requested a corrected sentencing order listing the offense as a third degree felony and stating that as a habitual violent felony offender, a minimum term of five years must be served prior to release. (ECF No. 16-3 at 146–50.) The circuit court granted the motion on March 3, 2013, and ordered the clerk to

amend the final judgment accordingly. (ECF No. 16-3 at 175–84.)

Approximately one month later, Petitioner filed another 3.800 Motion to Correct Sentencing Error During Pending Appeal, in which he argued that the Court erred in finding Petitioner to be a habitual violent felony offender and sentencing him as such. (ECF No. 16-3 at 188–92.) He argued that the status was based on an alleged previous conviction for aggravated battery, when in actuality, Petitioner had been charged with battery and the charge was ultimately dropped. (*Id.*)

Eventually, on April 15, 2014, the First DCA per curiam affirmed Petitioner's post-re-sentence appeal without written opinion. (ECF No. 16-4 at 107–08.) Petitioner subsequently filed the instant petition for writ of habeas corpus on June 12, 2014. (ECF No. 1.)

## **Scope of Federal Habeas Review**

The role of a federal habeas court when reviewing a state prisoner's application pursuant to 28 U.S.C. § 2254 is limited. *Williams v. Taylor*, 529 U.S. 362, 403-04 (2000). Under section 2254(a), federal courts "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgement of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

Additionally, federal courts must give deference to state court adjudications unless the state court's adjudication of the claim is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *See* 28 U.S.C. § 2254(d)(1). "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed. 2d 385 (1991); *Carrizales v. Wainwright*, 699 F.2d 1053, 1054-55 (11th Cir. 1983).

Moreover, a habeas petition grounded on issues of state law provides no basis for habeas relief, as a violation of a state statute or rule of procedure is not, in itself, a violation of the federal constitution. *Engle v. Isaac*, 456 U.S. 107, 120-21, 102 S.Ct. 1558, 1568, 71 L.Ed.2d 783 (1982); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1989). A federal writ of habeas corpus is only available in cases of federal constitutional error. *See Jones v. Goodwin,* 982 F.2d 464, 471 (11th Cir.1993); *Krasnow v. Navarro,* 909 F.2d 451, 452 (11th Cir.1990). The limitation on federal habeas review applies with equal force when a petition, which truly involves only state law issues, is "couched" in terms of alleged constitutional violations. *Branan*, 861 F.2d at 1508.

To prevail on a constitutional claim of ineffective assistance of

counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686. The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697.

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not attempt to divine the lawyer's mental processes underlying the strategy." *Chandler v. United States*, 218 F.3d 1305, 1314 n.16 (11th Cir. 2000) (en banc). "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id*.

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on. The lawyer's strategy was course A. And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*.

When the state courts have denied an ineffective assistance of counsel claim on the merits, the standard a petitioner must meet to obtain federal habeas relief is a difficult one. *Harrington*, 562 U.S. at 102. The standard is not whether an error was committed, but whether the state court decision is contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. 28 U.S.C. § 2254(d)(1). As the Supreme Court explained, error alone is not enough, because "[f]or purposes of § 2254(d)(1), an unreasonable

application of federal law is different from an incorrect application of federal law." *Harrington*, 562 U.S. at 100 (quotation marks omitted). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 102.

When faced with an ineffective assistance of counsel claim that was denied on the merits by the state courts, a federal habeas court "must determine what arguments or theories supported or, [if none were stated], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. So long as fairminded jurists could disagree about whether the state court's denial of the claim was inconsistent with an earlier Supreme Court decision, federal habeas relief must be denied. *Id*. Stated the other way, only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents" may relief be granted. *Id*.

Even without the deference due under § 2254, the *Strickland* standard for judging the performance of counsel "is a most deferential one." *Id.* at 105. When combined with the extra layer of deference that § 2254 provides, the result is double deference and the question becomes

whether "there is any reasonable argument that counsel satisfied

*Strickland's* deferential standard." *Id*. Double deference is doubly difficult

for a petitioner to overcome, and it will be a rare case in which an

ineffective assistance of counsel claim that was denied on the merits in

state court is found to merit relief in a federal habeas proceeding.

## Discussion

### Ground One: Ineffective assistance of appellate counsel for failing to timely raise on direct appeal that Petitioner was convicted of a non-existent crime

Petitioner contends that appellate counsel was deficient for failing to

argue on direct appeal that Petitioner was convicted of a non-existent

crime: felony battery on a DCF employee. Respondent argues that this is a

state law issue not cognizable as a federal habeas claim. Nonetheless,

Respondent also asserts that the claim is without merit.

To the extent Respondent argues that this claim is a matter of state

law, the Court disagrees. "[F]ederal habeas corpus relief does not lie for

errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting

*Lewis v. Jeffers,* 497 U.S. 7654, 780 (1990)). "Questions of state law rarely

raise issues of federal constitutional significance, because 'a state's

interpretation of its own laws provides no basis for federal habeas corpus

relief, since no question of a constitutional nature is involved.'" *Tejada v.*

*Dugger*, 941 F.2d 1551, 1560 (11th Cir. 1991) (quoting *Carrizales v. Wainwright*, 699 F.2d 1053, 1053–54 (11th Cir. 1983)). Federal habeas relief will only be granted for state law errors if the alleged errors were so critical that they rendered the entire trial fundamentally unfair in violation of the right to due process. *Id.*; *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988).

Petitioner has clearly phrased this claim as one asserting ineffective assistance of appellate counsel in violation of his constitutional rights. Indeed, considering whether appellate counsel rendered deficient performance involves considering whether this offense exists under Florida law. To resolve that issue the Court must look to the state court decisions. The Court need not consider whether the state's interpretation regarding this offense was right or wrong, nor would such be proper.

In this case, the State conceded that Petitioner's offense had been reclassified from a third degree felony to a second degree felony based on the specified employee finding. Petitioner's argument appears to miss the point. He was not convicted of a non-existent offense. He was convicted of felony battery, which is (both now and at the time) an offense under Florida law. His conviction—for purposes of sentencing—was, however, unlawfully reclassified from a third degree felony to a second degree felony based on

the specified employee finding. Whether his sentence was unlawful, however, does not change the fact that the jury convicted Petitioner of felony battery.

As to Petitioner's ineffective assistance claim, although not verbatim, Petitioner presented this claim to the First DCA in his amended state habeas petition. (ECF No. 16-2 at 52–65.) Because the First DCA per curiam denied the petition without written opinion, the Court considers it as a denial on the merits. *See Wright v. Sec'y of Dep't of Corrections*, 278 F.3d 1245, 1255 (11th Cir. 2002) (a summary disposition on the merits is entitled to the same deference as if the state court had entered written findings to support its decision). Accordingly, Petitioner must show that the state court's decision was contrary to or an unreasonable application of federal law. *See* §2254(d)(1). Because the state court clearly applied *Strickland* to Petitioner's claim, Petitioner must show that the state court's decision was an unreasonable application of federal law. He cannot meet this heavy burden.

As explained, Petitioner was not convicted of a non-existent offense. Arguing that Petitioner was convicted of a non-existent offense would have been frivolous. Failing to raise a frivolous issue does not constitute deficient performance. In addition, appellate counsel could not have raised

the sentencing error on direct appeal. Under Florida law, a defendant has

several different ways to raise a sentencing error:

> First, when preserved for review, the error may be raised on
> direct appeal. Second, even if not originally preserved, "to
> provide defendants with a mechanism to correct sentencing
> errors in the trial court at the earliest opportunity" and to "give
> defendants a means to preserve these errors for appellate
> review," we amended Florida Rule of Criminal Procedure
> 3.800(b) to allow defendants to file a motion to correct
> sentencing error even while an appeal is pending (but before
> the initial brief). This rule also authorizes the trial court to hold
> an evidentiary hearing. Third, under rule 3.850, a defendant
> may raise a sentencing error within two years after the
> sentence becomes final. . . . . Rule 3.800(a) provides yet a
> fourth avenue for asserting sentencing error . . . . Under this
> rule, a defendant may allege (1) that the sentence imposed is
> illegal; (2) that insufficient credit was awarded for time served;
> or (3) that the sentencing scoresheet was incorrectly
> calculated.

*Brooks v. State*, 969 So. 2d 238, 241–42 (Fla. 2007) (internal citations

omitted). In Petitioner's case, because the sentencing issue was not

properly preserved for appeal, appellate counsel could not raise the issue

on direct appeal. Counsel was not deficient for failing to raise an issue on

direct appeal that could not be raised.

Nonetheless, if an appeal is pending, defendant (or appellate

counsel) may file a motion to correct a sentencing error under Rule 3.800

so long as the motion is filed before the party's first appellate brief. *See*

Fla. R. Crim. P. 3.800(b)(2); *Collando-Pena v. State*, 141 So. 3d 229,

230–31 (Fla. Dist. Ct. App. 2014). Whether or not appellate counsel should have filed a motion to correct sentencing error on Petitioner's behalf, Petitioner cannot demonstrate he was prejudiced by such because Petitioner took advantage of the opportunity to file a 3.800 motion while his appeal was pending. He was then eventually re-sentenced.[4] Petitioner wholly fails to demonstrate any prejudice. The state court's adjudication of this claim was not contrary to or an unreasonable application of clearly established Supreme Court precedent. Accordingly, ground one is due to be denied.

### Ground Two: Ineffective assistance of trial counsel for failing to impeach the victim

In ground two, Petitioner claims trial counsel was ineffective for allowing the victim to "use perjured testimony" at trial. (ECF No. 1 at 6.)[5] The Court construes this as one alleging that trial counsel failed to impeach the victim at trial with prior inconsistent statements. Respondent

---

[4] To the extent Petitioner asserts there is a reasonable probability that had appellate counsel raised this error on direct appeal his conviction would have been vacated and his case would have been re-tried, Petitioner is wrong. A sentencing error does not result in the underlying conviction being overturned, nor does it render a new trial. Instead, a sentencing error merely results in re-sentencing.

[5] Although Petitioner asserts in his reply memorandum that he is not pursuing this claim, it is unclear whether he means he wishes to voluntarily dismiss this claim or that he simply opts not to render a reply to Respondent's response to this claim. *See* ECF No. 20 at 5. In an abundance of caution the Court will nonetheless address the claim.

argues that this claim is without merit.

As an initial matter, Petitioner fails to clarify which statements the victim allegedly "perjured" herself with at trial. Assuming, however, that he means the inconsistent statement regarding Petitioner attacking her while she was sitting down versus while she was standing, Petitioner presented this claim to the trial court in ground two of his first 3.850 motion. (ECF No. 16-2 at 352–54; ECF No. 16-3 at 1–2.) The trial court, however, denied the claim on the merits. (ECF No. 16-5 at 32.) The First DCA subsequently per curiam affirmed without written opinion. The state court's decision is, therefore, entitled to double deference.

Nothing suggests that the state court's decision was an unreasonable application of *Strickland*. "The decision as to whether to cross-examine a witness is 'a tactical one well within the discretion of a defense attorney.'" *Fugate v. Head*, 261 F.3d 1206, 1219 (11th Cir. 2001) (quoting *Messer v. Kemp*, 760 F.2d 1080, 1090 (11th Cir. 1985)). Mr. Ward did indeed cross examine the victim at trial. (ECF No. 16-1 at 304–10.) He explained, however, that because she was sympathetic, he wanted to get her off the stand as quickly as possible:

> A. My recollection is there were some slight variations in her testimony. Nothing glaring. You know, I can't remember exactly what they were but they weren't extremely – you know,

they weren't exactly consistent but it rarely ever is.

. . . .

    Q. Okay. And if I understand your testimony correctly, you did not feel that standing up or sitting down was going to wind up making those injuries or the allegation go away.

    A. No. I mean, there's no real, you know, there's no other plausible suspects. There's no – I just don't see how that would have made a difference.

. . . .

    A. Yeah, well, at this point, you know, I remember Ms. Galloway being on the stand. She was a very sympathetic victim. The idea is to get her off the sand as quick as possible.

. . . .

Q. Was she a person that it would have been smart to have tried to impeach with inconsistencies, in your view?
A. If there were glaring inconsistencies, yes. But, you know, this is a lady who's a civil servant that was beaten up on the job. For me to sit there and beat upon on her over minor things does not help Mr. Milledge at all. It hurts him, it makes the jury hate me, it makes the jury hate him.

(ECF No. 16-4 at 23–26.) Whether the victim was sitting or standing at the precise moment Petitioner attacked her is irrelevant to whether he attacked and committed felony battery upon her. Moreover, it is clear that Mr. Ward made the strategic decision not to impeach the victim on non-material issues because it would have made counsel and Petitioner look worse. The decision not to impeach the victim on whether she was sitting or standing when Petitioner attacked her was a reasonable strategic decision and does not rise to the level of deficient performance.

    Moreover, the decision not to impeach the victim on the issue of

precisely what position she was in when Petitioner attacked her did not

somehow prejudice Petitioner. "Absent a showing of 'a single specific

instance where cross-examination arguably could have affected the

outcome of either the guilt or sentencing phase of the trial,' the petitioner is

unable to show prejudice necessary to satisfy the second prong of

*Strickland*." *Fugate*, 261 F.3d at 1219 (quoting *Messer*, 760 F.2d at 1090).

For example, the Eleventh Circuit has "found ineffective assistance where

counsel failed to impeach the key prosecution witness with prior

inconsistent testimony where the earlier testimony was much more

favorable to the defendant." *Id.* (citing *Nixon v. Newsome*, 888 F.2d 112,

115–16 (11th Cir. 1989); *Smith v. Wainwright*, 799 F.2d 1442, 1443–44

(11th Cir. 1986)).

Whether Petitioner attacked the victim when she was sitting in a chair

or when she was standing, does not change the fact that Petitioner

attacked her, nor was one version more favorable to Petitioner's defense

than the other. *See United States v. Johnson*, 603 F. App'x 867, 873 (11th

Cir. 2015) (failing to impeach coconspirator did not amount to ineffective

assistance because impeaching coconspirator's testimony was not

essential to the defense strategy and defendant's testimony contradicted

that of the coconspirator). To the extent Petitioner believes this somehow

would have made the jury question the victim's credibility, two other witnesses subsequently testified that they witnessed Petitioner hitting the victim. (ECF No. 16-1 at 313–14; 324.) And, as Mr. Ward testified, he believed that impeaching the victim on such an insignificant point would have harmed the defense's case more than anything. *See Davis v. Singletary*, 119 F.3d 1471, 1476–77 (11th Cir. 1997) (defense counsel's decision not to impeach witness on grounds that he had been hypnotized as not ineffective assistance where bringing to jury's attention that witness had been hypnotized would have run the risk of bolstering the witness' testimony). Petitioner has demonstrated neither deficient performance nor prejudice. Accordingly, ground two should be denied.

### Ground Three: Ineffective assistance of trial counsel for failing to request a competency hearing

In ground three Petitioner asserts trial counsel "allowed Petitioner to be tried and convicted while he was actually incompetent to stand trial." (ECF No. 1 at 8.) Respondent argues this claim is conclusory, unexhausted, and procedurally defaulted. Nonetheless, Respondent also argues that the claim is meritless.

Arguably, this claim is conclusory because Petitioner provides no further insight into the factual basis for the claim. Nonetheless, the Court

construes this claim as alleging that trial counsel was ineffective for failing to request a competency hearing. Contrary to Respondent's assertion, however, this claim is exhausted and, therefore, not procedurally defaulted.

Although a verbatim restatement of the claims brought in state court is not necessary, a petitioner must present his claims to the state court "such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation." *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005). In ground seven of his first motion for postconviction relief, Petitioner asserted that trial counsel was ineffective for failing "to timely request that the Court . . . appoint a[n] expert to determine Defendant['s] competency to stand trial." (ECF No. 16-3 at 17.) While the claim here is not verbatim to that presented in his first motion for postconviction relief, a reasonable reader would understand that the claim's legal basis and factual foundation are the same. *See Darity v. Sec'y, Dep't of Corrections*, 306 F. App'x 532, 533 (11th Cir. 2009) ("Exhaustion requirements are not so rigid as to require a verbatim restatement of the claims brought in state court, but a petitioner must present his claims to the state court 'such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation."). Thus, Petitioner properly exhausted this claim in state court.

The circuit court denied this claim on the merits with a lengthy

explanation:

> As to Ground 7, Mr. Milledge asserts that he was suffering from mental illness at the time of trial and his trial lawyer should have requested psychological competency evaluation. I note that Mr. Milledge has apparently abandoned any claim that he was mentally retarded at the time of trial, an assertion inconsistent with his numerous, lengthy and quite adequate legal documents that he asserts he prepared himself as well as his testimony and legal arguments in the evidentiary hearing.
>
> I further note that at the time of the evidentiary hearing, Mr. Milledge testified that he had not taken any psychotropic medications for three weeks and he gave no indication of any difficulty following and participating in the proceedings.
>
> Mr. Ward testified that he was well aware of Mr. Milledge['s] history of mental illness since he was committed to FSH as incompetent at the time of the offense. Mr. Ward testified that he had no concerns about Mr. Milledge's competency prior to trial. Mr. Ward testified that when the trial testimony began to go badly for Mr. Milledge, Mr. Milledge complained about mental illness symptoms.
>
> Mr. Ward testified that he was appointed late in the process, after the case was already set for trial. Mr. Ward testified that he immediately went to see Mr. Milledge and, consistent with Mr. Milledge's speedy trial argument, Mr. Milledge insisted on an immediate trial.
>
> Mr. Ward testified that he informed Mr. Milledge that there would not be enough time both for an immediate trial and completion of psychological evaluation. Mr. Ward testified that the purpose of the evaluation discussed was to pursue an insanity defense, not to assert incompetence at the time of trial. Mr. Ward testified that Mr. Milledge decided not to delay the trial even though it meant that Mr. Milledge could not pursue the expert testimony necessary to an insanity defense.
>
> Mr. Ward testified that he 'had no concerns' as to Mr. Milledge's competence. Mr. Ward testified that Mr. Milledge

was "[v]ery manipulative but very smart." Additionally, Mr. Ward
believed that any issue as to Mr. Milledge's mental state would
have been severely compromised by the report from the State
Hospital concluding that Mr. Milledge was "absolutely
competent and malingering at the hospital." Mr. Ward testified
that he was certain that Mr. Milledge's statements about mental
illness symptoms late in the trial were not genuine.

I conclude that Mr. Milledge failed to prove ineffective
assistance of counsel as to Ground 7. Therefore, all relief as to
Ground 7 is hereby DENIED.

(ECF No. 16-5 at 34.) The First DCA affirmed the denial of this claim. (ECF

No. 16-5 at 39–40.) Accordingly, Petitioner must demonstrate that despite

the double deference owed to the state courts' decisions, that the state

courts' decisions were unreasonable under *Strickland*.

A defendant is competent to stand trial if he possesses sufficient

present ability to consult with his attorney with a reasonable degree of

rational understanding as well as a rational and factual understanding of

the proceedings against him. *Dusky v. United States*, 362 U.S. 402, 402

(1960); Fla. R. Crim. P. 3211(a)(1). A court must conduct a competency

hearing if there is reasonable cause to believe a defendant may presently

be suffering from a mental disease or defect rendering him incompetent to

the extent that he is unable to understand the nature and consequences of

the proceedings against him or to properly assist in his defense. *Pate v.*

*Robinson*, 383 U.S. 375, 385 (1966). The court, however, must have

information raising a bona fide doubt as to the defendant's competency.

*Battle v. United States*, 419 F.3d 1292, 1299 (11th Cir. 2005); *Watts v.*

*Singletary*, 87 F.3d 1282, 1286–87 (11th Cir. 1996). Courts should

consider three factors in determining the need for a competency hearing:

"(1) evidence of the defendant's irrational behavior; (2) the defendant's

demeanor at trial; and (3) prior medical opinion regarding the defendant's

competence to stand trial." *Tiller v. Esposito*, 911 F.2d 575, 576 (11th Cir.

1990) (citing *Drope v. Missouri*, 420 U.S. 162, 180 (1975)). The analysis of

whether a competency hearing should have been held focuses on what the

trial court did in light of what it knew at the time of the trial. *Id.*

     The record demonstrates there was never a bona fide doubt as to

Petitioner's competency to stand trial. Petitioner never alleged that he was

unable to understand the proceedings or that he was unable to

communicate with counsel concerning his defense. Instead, he merely

claimed he was hearing voices later in the trial. (ECF No. 16-4 at 14–19,

27–28.) At the evidentiary hearing, counsel testified that he was never

concerned about Petitioner's competency. (*Id.*) Counsel did not notify the

Court about Petitioner's claims of hearing voices toward the end of the trial

because "it was clear to [counsel] that [Petitioner] was just making it up

and lying to try to stop what was happening. [Petitioner] thought he was

going to get found guilty and he's – you know, the sudden on-set of voices and based on his demeanor . . . was clearly contrived." (*Id.* at 28.) Counsel made those judgments based on his professional experience having handled cases involving competency issues and based on Petitioner's history of malingering. (*Id.*) Moreover, counsel had a doctor's report from sometime during the week prior to trial that said Petitioner was "absolutely competent and malingering at the hospital." (*Id.* at 17.)

Because there was never a bona fide doubt about Petitioner's competency, there was no need for a competency hearing or any basis for counsel to request one. Accordingly, the state court's determination that counsel did not render deficient performance was not unreasonable. Furthermore, Petitioner cannot demonstrate prejudice where there was no deficient performance by counsel. This claim is therefore due to be denied.

### Ground Four: Ineffective assistance of counsel for failing to inform Petitioner that if he rejected the State's plea offer he could face enhanced penalties as a habitual violent felony offender

In ground four, Petitioner says counsel never advised him that by rejecting the State's plea offer he could be sentenced as a habitual violent felony offender. (ECF No. 1 at 10.) Respondent argues the claim is meritless.

Petitioner presented this claim to the state court in his first motion for

post conviction relief. After the evidentiary hearing, the state court denied

the claim on the merits. (ECF No. 16-5 at 35.) The state court explained

that counsel testified at the evidentiary hearing that he discussed the

potential for enhanced sentencing with every client as part of a checklist.

Counsel also credibly testified that Plaintiff refused all plea offers and was

adamant about going to trial. The state court noted that the trial transcript

"overwhelmingly supported" counsel's testimony. Furthermore, the state

court explained:

> Mr. Milledge was not charged with felony battery. Mr. Milledge
> was charged with aggravated battery on a specified employee,
> a first degree felony punishable by up to 30 years in prison.
> Thus, Mr. Milledge's assertion that he would have taken the
> plea offer because of the potential of a 10 year HVFO sentence
> is preposterous. After an extensive colloquy with the judge, on
> the record, including Mr. Milledge's acknowledgment of the
> potential of a 30 year prison sentence on this case alone, Mr.
> Milledge turned down the plea offer.

(ECF No. 16-5 at 35.) Petitioner has not demonstrated that the state

court's denial of this claim was unreasonable.

At the evidentiary hearing, counsel testified that he informs all clients

about the prospects of habitualization as part of a checklist. (ECF No. 16-4

at 28.) Although counsel did not have recollection about specifically

discussing the prospect of habitualization with Petitioner, the fact that

counsel discusses it with all clients as part of a checklist strongly suggests

that counsel did in fact discuss habitualization with Petitioner. It was, therefore, not unreasonable for the state court to determine that counsel did not render deficient performance.

Moreover, the record is clear that Petitioner knew he could face up to thirty years in prison if he turned down the plea offer and proceeded to trial. (ECF No. 16-1 at 263.) Knowing full well that he could be sentenced to thirty years in prison, Petitioner opted to go to trial. Thus, even assuming he did not know about the potential ten-year sentence as a habitual violent felony offender, he nonetheless cannot demonstrate that he was somehow prejudiced. Petitioner opted to go to trial knowing that he faced much more than ten years. Accordingly, Petitioner has demonstrated neither deficient performance nor prejudice. Ground four is due to be denied.

## **Certificate of Appealability**

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

## Conclusion

For the foregoing reasons it is respectfully **RECOMMENDED** that the Petition for a writ of habeas corpus, ECF No. 1, should be **DENIED**, and a certificate of appealability should be **DENIED**.

**IN CHAMBERS** this 16th day of March, 2017.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy**

thereof. <u>**Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.**</u> **A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636**.